ORVILLE J. COMSTOCK ET AL., PLAINTIFFS IN ERROR, v. JOHN MICHAEL, DEFENDANT IN ERROR.

1.  Pleading : PETITION.   The petition substantially set out in the opinion, *Held*, To state cause of action.

2.  ——: DOUBLE ASPECT.   The petition though primarily framed for the purpose of a judgment *quia timet*, yet, *Held*, Sufficient to sustain judgment of foreclosure.

3.  Mortgage : PURCHASE OF OUTSTANDING TITLE.   A mortgagee in possession before foreclosure, buying or paying off an outstanding lien for the purpose of protecting his possession, shall have what he has paid with legal interest and no more.

4.  ——: RENTS AND PROFITS.   A mortgagee in possession of productive real property before foreclosure, *Held*, Liable for net rents and profits.

ERROR to the district court for Lancaster county.   Tried below before POUND, J.

*Harwood, Ames & Kelly,* for plaintiffs in error.

*Lamb, Ricketts & Wilson,* for defendant in error.

COBB, CH. J.

The plaintiff in the court below, defendant in error, alleged in his petition that on and prior to the 23d day of September, 1872, the defendant, Orville J. Comstock, was the owner in fee of the following described real estate, situate in the county of Lancaster, to-wit: the north half of the north-east quarter of section twenty, in township nine north, of range seven east of the sixth principal meridian. That on said last mentioned day, the said defendant being then indebted to the plaintiff in the sum of two hundred and forty-eight dollars, conveyed the said premises by trust deed to L. W. Billingsley in trust for the faithful payment of said indebtedness within one year from the above mentioned date, together with interest thereon at the rate of twelve per cent per annum. That it was expressly provided in said deed of trust that upon the payment of said indebtedness the said Billingsley, or his successor therein designated, should reconvey the said premises to the said defendant, or his heirs, or assigns. That it was in said deed of trust further stipulated by and between the parties to the said indenture, that the title, both legal and equitable, and all right of possession and equity of redemption in and to all of the said property therein conveyed, should be in the said Billingsley, or his successor therein designated, and the quiet and peaceable enjoyment to them, the said defendant forever warranted to defend against all claims whatsoever. That it was in said trust deed further stipulated that upon the failure of the said defendant to pay said indebtedness within the time above specified, and at the request of the said plaintiff, the said Billingsley was authorized to sell said premises to the highest cash bidder at the door of the post-office in the town of Lincoln, Nebraska, after giving thirty days' notice of the time, terms, and place of sale, and the property to be sold, by advertisement in some newspaper printed and published in said

19

Lancaster county, and upon such sale to execute and deliver to the purchaser, good and sufficient deeds to such property in fee simple, and that the said deed, wherein a recital of the request of the said plaintiff, or his executor, administrator, or assigns, or of the holders of the note given for said indebtedness, that they should proceed to sell, of the publication of said notice, and in case of the sale by the sheriff of said county of the happening of either or any of the events making him the successor in said trust, shall be received in all courts of law and equity to all intents and purposes as full, sufficient, and conclusive proof, and shall convey a clear and indefeasible estate of inheritance to the purchaser thereof, both at law and in equity, and that the said Billingsley or his successor should apply the proceeds arising from said sale in the manner following, that is to say: *First,* They shall pay the expenses of executing this trust, including twenty-five dollars compensation to said trustees or said sheriff for their or his services. *Second,* Any amount or amounts paid by said plaintiff or his assignees or indorsers on account of taxes on the said premises, with interest at twelve per cent per annum thereon. *Third,* All amounts remaining unpaid upon said note, and all interest upon said note at twelve per cent after due up to date of sale, and the remainder or surplus, if any, shall be paid over to said defendant Comstock or his legal representatives. And that it was further in said deed of trust stipulated that all actions or suits in any manner issuing out of the execution of said trust, except by purchasers under it or cases of gross fraud undiscovered between any of the parties to said trust deed or their privies, shall be only brought within one year after the day of the sale of said premises under the said trust, and at no time thereafter. *Fourth,* And that the deed of said trustee to the purchaser at such sale should transfer and convey to such purchaser all the right, title, and estate and interest of the said defendant Comstock in and to the said premises.

That said trust deed was on the 23d day of September, 1872, duly filed for record in the office of the county clerk of said Lancaster county, and is of record in said office; that said defendant wholly failed to pay said indebtedness as provided in said trust deed, and that after the same became due and payable, said plaintiff requested and demanded that said trustee proceed to sell said premises according to the terms of said trust deed, and that thereupon the said trustee, after having advertised the time and place of said sale and the property to be sold, as in said trust deed directed, did on the 3d day of September, 1874, at the door of the said post-office, offer for sale to the highest cash bidder the said premises, under and by virtue of the provision in said trust deed contained. And said trustee adjourned said sale for want of bidders until the 31st day of October, 1874; that on said 31st day of October, 1874, after thirty days' notice had been given as provided in said trust deed, under and by virtue of the power in said trust deed contained, and in pursuance thereof, and in the manner therein prescribed, the said trustee sold the said premises for the sum of two hundred and twenty-five dollars to the said John Michael, he being the highest bidder therefor.

And that thereafter, on the said 31st day of October, 1874, the said trustee, under and by virtue of the power in said trust deed contained, and in pursuance thereof, made, executed, and delivered to said plaintiff a deed of conveyance conveying to said plaintiff all the right, title, and interest of the said defendant, Comstock, both at law and in equity, in and to the said premises, which deed was on the 20th day of June, 1876, duly filed in the office of the county clerk of said Lancaster county, and is now of record in said office. That said sale was made with the knowledge and consent of the said defendant, Comstock, who fully ratified and confirmed the same; and that the said trustee, with the knowledge and consent of the said

Comstock, put the plaintiff in the possession of the said premises, and that since the 16th day of December, 1874, the plaintiff has been in continuous, peaceable, and notorious possession of said premises, with the knowledge and consent of the said defendant, Comstock.

That no proceedings at law had been had or taken for the collection of the debt secured by the said deed of trust or any part thereof, and that neither the whole nor any part thereof had been collected or paid.

The said plaintiff also claimed in his petition that after the execution and recording of the said deed of trust, the said defendant being indebted to one C. C. Burr for the sum of $125.00, payable on the ... day of ........, 187.., with interest at the rate of 12 per cent per annum, executed and delivered to the said Burr a mortgage on the same land covered by the said deed of trust, to-wit: the north half of the north-east quarter of section twenty, in township nine north, of range seven east of the sixth principal meridian, for the purpose of securing the payment of the said note and interest, which mortgage was duly recorded in the proper county, etc. That on the ...... day of ........, 1882, for the purpose of protecting his title acquired by the said deed of trust, plaintiff bought in said mortgage, which was then long past due and wholly unpaid, for a valuable consideration; and that on the ...... day of ........, 1882, the said C. C. Burr, for the consideration aforesaid, assigned and delivered the said note and mortgage to the plaintiff. Plaintiff also alleged in his said petition that said premises were in the year 1870 subject to taxation, and were in said year duly assessed, and that the taxes of said year were duly levied thereon; that said taxes become delinquent and remained unpaid; and that on the 5th day of September, 1871, the treasurer of said county sold said premises for delinquent taxes of said year 1870 to Charles Cadwallader, for the sum of $15.50. That said Cadwallader sold the certificate of sal-

thereof to I. M. Riddell; that said Riddell took out a tax deed of said premises on said certificate, which deed was duly recorded; and that on the 25th day of May, 1876, the plaintiff, for the purpose of protecting his title to said premises, bought the same from the said Riddell and received a quit-claim deed from him therefor.

Plaintiff also further alleged in his said petition that on the 19th day of March, 1872, said defendant was indebted to Godfrey & Buckstaff Brothers in the sum of one hundred dollars, for building material sold and delivered to said defendant under a contract with him, and used by him in the construction of buildings on the said land; that said Godfrey & Buckstaff Brothers took such steps that they became and were entitled to a lien upon the said tract of land for the value of the building material so furnished to the defendant as aforesaid; and that on the ...... day of ........., 187..., the said plaintiff, to protect his title to said premises, and to prevent the same from being sold under said mechanic's lien, paid off the same, and paid said Godfrey & Buckstaff Brothers the sum of one hundred dollars and interest thereon, at the rate of ten per cent per annum from the 9th day of March, 1872.

Plaintiff further alleged that while in the actual and peaceable possession of said land he paid the taxes thereon for the years and at the dates and the sums following, to-wit:

Aug. 2, 1876, tax of 1875 .............................$14 86
Nov. 3, 1877, " 1876............................. 15 74
Oct. 30, 1878, " 1877............................. 16 95
Oct. 28, 1879, " 1878............................. 11 76
Nov. 20, 1880, " 1879............................. 10 02
Oct. 1, 1881, " 1880............................. 8 01
Aug. 9, 1882, " 1881............................. 13 53

Amounting in all to the sum of.........................$90 87

And the plaintiff further alleges in and by his said petition that the defendant, Walter Thurman, claims some interest in said premises by virtue of an attachment levied upon the pretended interest of the defendant Comstock therein; and that the said Comstock still claims some interest in the said premises.

The said petition closes with a prayer that the title to the said premises may be decreed to be quieted in him, the said plaintiff, and that the defendants, Orville J. Comstock and Walter Thurman, and all others claiming under them, be forever foreclosed and barred of all right, title, and interest in and to said premises; also for general relief, and if the court should find that the legal title still remains in the said Comstock, the plaintiff prays that his said mortgage may be foreclosed and said premises sold.

The defendant moved to strike out of the said petition certain parts thereof as containing immaterial, irrelevant, and redundant matter. But it is impossible to readily ascertain the particular parts of the petition intended by the motion, the same being designated as "beginning with the words: 'and plaintiff further says' on the fourth line from the bottom of the second page of said pleading," etc. The following words are also found in the transcript: "(Note.) The portions of the petition referred to in above motion will be found marked with red ink brackets, Clk. D. C." But the pagings and alignments of the original are not retained in the transcript sent to this court, nor are there any red ink brackets.

The attention of the bar is again called to the necessity on the part of counsel of examining the records sent to this court before submitting them.

The above motion was overruled, but for the reason above stated I express no opinion upon such ruling, being unable to identify the portion of the petition sought to be stricken out.

The answer of the defendant, Walter Thurman, was then

filed, in which he alleged the ownership of the defendant Comstock in the said premises; and by way of counter-claim or cross petition set up and alleged that at the May, 1883, term of said court, in a certain cause then pending in said court wherein said answering defendant was plaintiff and said Comstock was defendant, and in which an order of attachment had been duly issued and duly levied on said lands, he, as plaintiff therein, by the consideration of said court, duly recovered a judgment against said Comstock for the sum of $68.96 debt, and $6.65 costs of suit; that said attachment still being in full force, an order was duly made and entered in said cause that said lands be regularly appraised, advertised, and sold for the satisfaction of said judgment, which said judgment and order still remained in full force, unreversed and unappealed from, with prayer, etc.

The said defendant Comstock then applied to the court for an order to compel the plaintiff to separately state and number his several causes of action, which order was denied.

The defendant Comstock then filed his answer to the said petition, in and by which he admitted that prior to the twenty-third day of September, 1872, he was the owner in fee of the said real estate, and that on said day he executed and delivered the trust deed or mortgage on said premises in said petition described, conditioned for the payment by the defendant to the plaintiff of the sum in said petition stated at the expiration of one year from said date, with interest, as in said petition alleged; but he denied that he was at that or any other time indebted to the said plaintiff in the sum of $248, or in any sum other or greater than the sum of two hundred dollars, which latter sum was the true and sole consideration for said mortgage or trust deed; and that the remainder of said sum of two hundred and forty-eight dollars, to-wit: the sum of forty eight dollars, was taken and reserved by said plaintiff and contracted to be paid to him by said defendant unlawfully and corruptly,

for the sole, unlawful, and corrupt purpose of paying and securing to said plaintiff of a greater rate of interest than twelve per cent per annum, to-wit: about forty per cent per annum, for the loan and forbearance of said sum of two hundred dollars at that time loaned to this defendant by said plaintiff.

The said defendant also admitted the execution and delivery by him to the said C. C. Burr of the mortgage described in the said petition, also that said Burr assigned and delivered the same to said plaintiff, but averred that the sole and only consideration paid by the plaintiff to the said Burr for said assignment and transfer was the sum of forty dollars. And defendant denied that no action or proceeding has been begun at law for the collection of the indebtedness secured by said mortgage, but averred that a note given to secure said indebtedness was by said Burr sued at law in the county or district court of Douglas county in this state; and that a judgment has been rendered in said suit, and that more than five years had elapsed at the time of the commencement of this action since any execution had issued on said judgment. And said defendant denied that said land was ever lawfully assessed for taxation, and denied that any taxes were ever lawfully levied thereon; and denied each and every allegation in said petition contained not in said answer expressly admitted.

The said plaintiff thereupon filed two several replies, denying each and every allegation in the several answers of the defendants Thurman and Comstock.

There was a trial to the court, a jury having been waived by the several parties to said cause. Whereupon, the court found the legal title to the real estate described in the plaintiff's petition to be in the defendant, Orville J. Comstock; that on the 23d day of September, 1872 the said Comstock, in consideration of two hundred and forty-eight dollars, executed and delivered to the plaintiff the trust deed mentioned in the said petition; that at the date, and for the

consideration in said petition set out and alleged, the said defendant executed and delivered to the said C. C. Burr the mortgage described in the said petition; that before the commencement of this action, the said C. C. Burr, for a valuable consideration, assigned the said debt and mortgage to the plaintiff; that on the 19th day of March, 1872, Godfrey & Buckstaff Bros. obtained a valid mechanic's lien on the premises described in the petition against the defendant Comstock for the sum of one hundred dollars, and that afterwards and to protect his security the plaintiff paid off the said sum of one hundred dollars; that in order to protect his said security, the said plaintiff has paid the taxes on the said premises for the years 1870, 1875, 1876, 1877, 1878, 1879, 1880, and 1881.

The court further found that there was at the date of said finding due the said plaintiff from the defendant Comstock the sum of one thousand two hundred and sixty-one dollars and five cents, as follows, to-wit: On the trust deed, five hundred and seventy-five dollars and thirty-six cents; on the Burr mortgage, two hundred and ninety-five dollars; on the mechanic's lien, two hundred and three dollars and sixteen cents; and for taxes paid, the sum of one hundred and eighty-seven dollars and fifty-three cents.

The court thereupon adjudged and decreed that the said plaintiff have a first and valid lien on the said premises in the petition described for the sum of one thousand two hundred and sixty-one dollars and five cents; that one thousand and fifty-seven dollars and eighty-nine cents of the said sum shall draw interest at the rate of twelve per cent per annum until paid, and that two hundred and three dollars and sixteen cents of said sum shall draw interest at the rate of seven per cent per annum until paid.

The court further found that the defendant, Walter Thurman, had a valid and second lien on the said premises for the sum of one hundred and six dollars and fifty cents, with interest at twelve per cent per annum until paid,

by virtue of the proceedings set up in his answer herein, and made an order of sale and distribution accordingly.

There was a motion for a new trial by both defendants, which was overruled, and the cause brought to this court on error.

There are six errors assigned, which will be considered in their order.

1. "In permitting the introduction of any evidence under the petition on behalf of the plaintiff over the objection of the defendants, that the same does not state facts to constitute a cause of action."

I do not think there can be a doubt that the petition states a cause of action. But it must be admitted to be a question of some difficulty whether the cause of action stated constitutes a sufficient foundation for the judgment rendered. My individual opinion was that it did not, but the majority of the court being of the opinion that it does, I yield.

There is, doubtless, a recognized theory of equity pleading by which the pleader states his facts sufficiently broad and comprehensive to sustain one of two alternative judgments or decrees, as may be held by the court to be appropriate or applicable. There can be no doubt that a deed of trust can be foreclosed the same as an ordinary mortgage, and although the plaintiff had at one time adopted and sought to pursue an unwarranted and inadmissible remedy, yet it cannot be said that he thereby forfeited his right, while yet in the *locus penitentiæ*, to turn back and enter upon the true course. And as to the effect of whatever he did while in pursuit of the false method, while we must hold that he gained nothing by such proceedings, we must admit that he lost nothing beyond his time, labor, and expenses. If he lost or forfeited nothing by his attempt at a foreclosure out of court, can he be said to lose anything by stating the same in his petition, except to incumber the same with impertinent and redundant matters? Certainly not.

2. "Because of error in the assessment of the plaintiff's recovery.    1. In allowing the recovery of interest on the principal sum secured by the plaintiff's trust deed, and in determining said principal to be more than two hundred dollars.    2. In allowing the plaintiff to recover more than seventy-five dollars on account of the mortgage purchased by him of C. C. Burr, that being the amount paid by him therefor, and in allowing recovery therefor the note which the same was given to secure, being barred by the statute of limitations, and having been merged in a judgment which at the beginning of the action was dormant and barred by the statute of limitations, and therefore at the time of its purchase by plaintiff no lien on the premises.    3. In allowing the plaintiff any sum for the mechanic's lien pleaded in his petition, the same being barred by the statute of limitations and being shown by the testimony to have been paid by the defendant Comstock."

A thorough examination and consideration of the evidence in the case led us all to the conclusion that two hundred dollars only was loaned by the plaintiff to defendant, Comstock, and constituted the sole consideration for the trust deed for two hundred and forty-eight dollars; that the said contract was therefore usurious; and that consequently the allowance of more than two hundred dollars without interest thereon was, under the pleadings and proofs in the case, erroneous.

As to the Burr mortgage, it was not barred by the statute of limitations, the same not having run ten years.    It makes no difference what unsuccessful efforts had been made to collect the note, it had not been collected and the note and mortgage taken together constituted a lien on the land. The plaintiff, according to his own allegations, was in possession of the land when he bought in this lien.    It was therefore his privilege, if not his duty, to buy it in, for the purpose of protecting his interest and possession; but it was not his privilege to buy it in at a discount, and either

hold it at interest at its face value as an incumbrance on the land, or even to charge it up at its face value as an accretion to the lien which he already held on the land. The relation between a mortgagee in possession and his mortgagor is much like that between tenant and landlord, so far as the question which I am now considering is concerned, and in the earliest case heard before this court, *Mattis v. Robinson*, 1 Neb., 3, the court, in the syllabus, say: "A tenant buying in an outstanding title for the purpose of protecting his possession shall have what he has paid and legal interest, and no more." This rule of law, which cannot be doubted, is equally applicable to the purchase of outstanding liens and incumbrances which have not arisen to the dignity of titles. According to the plaintiff's own testimony he paid seventy-five dollars for the Burr mortgagor, and it appears from the assignment itself, as found in the record, that the purchase was made on the 5th day of December, 1882. The plaintiff will therefore be entitled to the sum of the seventy-five dollars with interest thereon at the rate of seven per cent per annum from said 5th day of December, 1882.

There is a pen and ink entry in the bill of exceptions, of which the following is a copy: "It was admitted that the taxes were paid by Michael as alleged in the petition, but the evidence was objected to for irrelevancy and immateriality by the defendants severally; the objection overruled," etc. Doubtless, as we have above stated, the plaintiff while in the possession of the land had the right to pay the taxes, for the protection of his interest, and he is entitled to all sums disbursed for that purpose, together with interest from the date of such disbursement at legal rates. The following are the several sums paid for taxes by the plaintiff, as appears by the petition, together with the amount for which the land was sold for the taxes of the year 1870, which the plaintiff afterwards acquired by assignment, as appears by the bill of exceptions, and the respective dates

from which the plaintiff is entitled to interest on the said several sums:

Sept. 5, 1871 .................................................$15 50
Aug. 20, 1876 ............................................. 14 86
Nov. 3, 1877 ..... ...................................... 15 74
Oct. 30, 1878 ............................................. 16 95
Oct. 28, 1879 ............................................. 11 76
Nov. 20, 1880 ........................................... 10 02
Oct. 1, 1881 .............................................. 8 01
Aug. 9, 1882 ............................................. 13 33

Those of the above items which bear date prior to June 1, 1879, will draw interest from their respective dates at the rate of ten per cent per annum, up to that date, after that date they, as well as those items bearing date subsequent to June 1, 1879, will draw interest at the rate of seven per cent per annum.

The only remaining item of disbursement claimed by plaintiff in his petition to have been made by him while in the possession of the said premises, and for the purpose of protecting his possession and lien, is that of the mechanic's lien. We have carefully examined the record for evidence of the buying in or paying off of this lien, and the only testimony which we are able to find bearing on the point is that of Captain Billingsley in which he says: " It is a great many years ago and my recollection is not very definite, but my recollection is that that lien was paid off by funds received from Mr. Michael, either before or after the trustee's sale, I would not be certain which." The trustee's sale took place, according to the petition, on the 31st day of October, 1874. The mechanic's lien was filed in the clerk's office on the 19th day of March, 1872, and the last item of the account of materials furnished upon which said lien was founded bears date January 2, 1872. So that at the time of said trustee's sale the same had ceased to be a lien on said land for nearly ten months. And if

the plaintiff bought the claim in, or paid it off, at or after said trustee's sale, he only acquired a personal claim against the defendant Comstock, if anything, and not a lien on the said real estate.

3. "Because the finding, decision, and judgment are not sustained by sufficient evidence and are contrary to law."

After what has been said under the second head, it is deemed unnecessary to examine further into the sufficiency of the evidence.

4. "Because of errors of law occurring at the trial," etc.

Attention not being called to errors properly falling under this head by plaintiffs in error in their brief, the subject will not be pursued.

5. "Because the court erred in overruling the defendants' (plaintiffs in error) motion to strike out certain immaterial, irrelevant, and redundant matter," etc.

For reasons stated in the early part of this opinion I am unable to identify the particular portion of the petition referred to in the motion to strike out, and will only say in this connection that, in my view, the granting or denying of a motion to strike irrelevant or redundant matter from pleadings is, under our system of practice, a matter resting largely in the discretion of the trial court; and that to justify the reversal of a judgment for such cause, there must be an abuse of such discretion, at least to the apparent prejudice of the complaining party.

6. "Because the court erred in overruling defendants' (plaintiffs in error) motion to require the plaintiff (defendant in error) to separately state and number his several supposed causes of action in his petition contained," etc.

In my view of the case there is but one cause of action stated in the petition. Neither the Burr mortgage, the payment of taxes, or the mechanic's lien, if paid off by the plaintiff in the manner alleged in the petition, would constitute a separate cause of action in his hands against the defendant Comstock, but could only be added to his main

Comstock v. Michael.

cause of action as accretions to swell the amount of his recovery. In that view, no purpose of utility or convenience would be subserved by numbering them; and they were already sufficiently separated in their statement.

It appears from the testimony of the plaintiff that while he was in the possession of the mortgaged premises he derived certain rents and profits. These the law requires him to account for and charge himself to against his several items of charge and allowance against the defendant Comstock. The following is the testimony of the plaintiff applicable to this point:

Q. How many years have you rented it?

A. Well, I cannot tell. It must have been eight or ten years.

Q. What would be the average rent a year; eight or ten dollars, or what?

A. It might be eight dollars; I don't think it was hardly that; some years ten, and in the first years I only realized six or seven or eight dollars, until the last year. It would probably average six or seven dollars.

The amount which I find the plaintiff to be chargeable with on this account is seven dollars per year, beginning with the year 1875; the several items to draw interest up to the first day of June, 1879, at the rate of ten per cent per annum, and after said date at the rate of seven per cent per annum.

The findings and judgment of the district court are reversed, and the cause remanded to the district court with directions to enter a final decree in conformity to this opinion.

REVERSED AND REMANDED.

THE other judges concur.